Thank you, Your Honor. Theodore Boutrous, representing Nestle USA. I'd like to reserve three minutes for rebuttal. Thank you. Ms. Falcone's main theory in this case is that when goods are sourced from third parties overseas, many consumers care about responsible sourcing and the risks of child labor. Nestle USA cares deeply about those issues, too, and the Nestle cocoa plan has spent hundreds of millions of dollars supporting cocoa farmers, helping them improve their processes, combating the risk of child labor, and enabling access to quality education for children in those cocoa farming communities. But the question today is one of class certification. And here the class of millions and millions of consumers rests on assumptions that every single consumer saw the statements on the 59 different labels over a decade that Ms. Falcone challenges, that they understood those statements as promises about the risks of child labor, even though none of the labels mention child labor. In fact, that's the one thing the labels all have in common. It rests on the assumption that all the consumers found those statements material and relied on them to buy the chocolate and that they would not have paid one cent for the chocolate absent the labels. The record does not contain evidence supporting any of those assumptions from the plaintiff, let alone all of them. Ms. Falcone, in moving for class certification where she had the burden by a preponderance of the evidence to meet Rule 23 standards, did not submit an expert opinion, surveys, any evidence regarding any of these other consumers. Nestle, on the other hand, submitted an expert report from Dr. Kivitz that showed affirmatively that most consumers would not have seen, understood, or relied on the statements in the way Ms. Falcone does. This court should reverse class certification. It clearly does not meet the standards of Rule 23. And there are also deep Article III standing questions regarding the absent class members. Let me start with the predominant standard, which the Supreme Court has said is demanding. And in Rule 23, the Supreme Court has also said that the standards of Rule 23 are stringent and in practice exclude most claims. And here they exclude Ms. Falcone's claims from being certified. The individualized issues engulf any potential common issues. And I'll start with the exposure issue. So California law is clear, as is this court's case is interpreting it, that before there can be a class action, consumer class action based on alleged misstatements in advertising or labels or anything else, there has to be a mechanism for class-wide proof that everyone in the class was exposed. And in this court's words in the Maza case, that it is necessary for everyone in the class who have viewed the allegedly misleading advertising. How could you have missed it if you're buying the product? Very easily, Your Honor. Because we only look at the front label? Well, the front label, it's on the back label. So the evidence our experts show that most people, I think this — and where all the nutritional information is and the content. And this is someplace where Nestle would like you to look, right? Definitely would like you to look. Nestle has invited you to look at the back. There's no question that the company knows the consumers may want information that is on the back of the label, but for different reasons. So there's no question some people, Ms. Falcone, for example, says she cared about these sustainability issues. But I don't understand the argument on exposure because it's on the label. If this were someplace else, it was hidden in the bottom of a cereal box or something, that might be different. But this is sort of open and notorious, and it's right adjacent to things that Nestle really wants you to look at. Your Honor, I think that goes to the question, does exposure just mean potentially available to be seen and read? I think that's the definition the court's suggesting and then the plaintiffs have suggested. But this Court's cases and the California Court of Appeal cases like Downey and the Target made in the USA case go one step further. It's whether you can, on a class-wide basis, say that all the class members, or virtually are, nearly universally read the statement because that's the only way they could be injured. When we're talking about information being the injury-causing mechanism, the only way for an injury that goes to Article III standing to occur is for the person to have actually first and foremost read the statement. And so, counsel, this would go to, for example, if Nestle had misrepresented the number of calories in a serving and cut it in half, your argument would also be a lot of people don't read that. And therefore, there would be no class action, even if this was a material misrepresentation, just a clear, flat-out lie. Well, that would be a much closer case, Your Honor.  Because here the argument is that the misstatement relates to child labor risks. There's nothing on the back of the label about child labor. That goes to the understanding point, which I can get to quickly here. The understanding point seems to me to be a much stronger point than exposure. So maybe I'll move to that. Judge Dalton may have some questions on that, but at least as for me, the exposure doesn't feel like your best point. I'll move on, Your Honor, because I think the understanding point, again, I mentioned 59 different labels. Actually, Judge Barbee, I would like to make one point on the exposure point because it does kind of prove my point, that they did submit, because counsel probably mentioned their expert on exposure, Ms. Matthews. She came in and she did not submit a report showing that most people would have seen and read the statement. But even more telling, she admitted that when she bought these chocolates, she was not deceived because she did not read or see the sustainability information. So their own expert who came in to show exposure, that's at ER 64, said she wasn't deceived because she didn't even see the statement. So it's not unrealistic to say exposure can't be established. But here on understanding, we have 59 different labels over a 10-year period. And another burden that the plaintiff has here is to show that reasonable consumers would have been likely to be deceived, which means they must have had at least the same understanding if they were exposed of those statements. And here, as I mentioned, none of the statements mention child labor risks. They differ in their content across the statements. And our expert submitted, we submitted expert evidence that showed that very few consumers would have understood, and there's a lot of inferential leaps you have to take to see first Nestle cocoa plan, that we have to assume that a consumer would know what that was and care about it. We'd have to assume that they knew that responsible sourcing or sustainability had something to do with child labor risks. And let me again make clear, Nestle is doing, spent hundreds of millions of dollars to try to combat child labor risks and make the farming situation better. These labels didn't happen by themselves. Nestle spent a lot of time and effort developing the labels. Presumably they did it because they thought it would have a beneficial impact on their image or on sales. I have a hard time saying we shouldn't pay any attention to what Nestle itself has decided to say because nobody's going to understand it and be affected by it. That just can't be consistent with what Nestle's own behavior suggests. Now let me divide for a moment. I understand your arguments is going to the damages class. I don't really understand them as going to the injunctive relief class. And do these arguments have an impact on the injunctive relief class? Two things, Your Honor. First, on the injunctive relief class, Ms. Falcone, the named plaintiff, does not have standing to bring an article under arbitration. Well, we measure standing at the beginning, and the fact that Nestle's subsequent changes the labels doesn't mean she couldn't have standing receipt with her claim. Well, she's admitted that she thinks the labels are now perfect and that she loves them. And that may be an argument against injunctive relief, but it doesn't take away standing because we measure standing at the beginning, and you're not arguing. I didn't see any evidence that, in fact, Nestle's labels were perfect at the time the lawsuit was filed. Well, we believe they were lawful, and that goes to your first question, Your Honor. You're citing her testimony that they're perfect, so she can't have standing. That's not the point in time we measure standing. I think she has to have standing throughout, Your Honor, to obtain injunctive relief. You can't strip away a plaintiff simply by trying to say to the class representative we've solved the problem. That may solve the problem in terms of whether injunctive relief is granted, but I don't think it eliminates the lawsuit. I think it does, Your Honor. I think that to have standing regarding future, to enjoin future activity, if the future activity has ceased, there's no basis and no potential injury to the named plaintiff. It feels more like a mootness question than a standing question. I think it's both. But as to Judge Clifton's first question, of course Nestle thinks that some people care about sustainability issues, care about the supply chain and the child labor risks. Our argument isn't that they put this information in here because it was meaningless. It's that plaintiff's burden is to show that everyone, that that was the core decision-making factor for them in purchasing these chocolate chips and other chocolate products. There's no evidence that that's true. The evidence, the only evidence, substantive evidence that was submitted before their reply brief shows the opposite, that most people do not base their chocolate-buying decisions on those factors. That most people would not have read these labels to deal with child labor risks. And that most people did not rely on those statements in making their purchasing decisions. That's just a pure Rule 23 issue that has not been satisfied. They did submit an expert in rebuttal, which had many, many problems under Daubert. But even that submission said I think something like 70% of consumers would be less likely to buy if they knew cocoa was made with child labor. One of his findings was that 14% of people would be more likely, which of course makes no sense, to buy chocolate if there was child labor involved in the supply chain. How can that be commonality and predominance across the class? It simply cannot be. And so back to the Article 3 standing point before I sit down. Here plaintiffs are asking this court to interpret California law to not require proof that the million people in the class, the absent class members, were injured. It's just that they were likely to be deceived. They put all their chips on the reasonable consumer test and say all they have to show is that a reasonable consumer might have been deceived. So someone who didn't see the statements, who didn't know what they meant, did not know they had anything to do with child labor risks, who didn't rely on them, who didn't care about them, who would have bought the chocolate anyway at the same price, they would be part of the class even though they're not injured. And that just runs flat into TransUnion, the Ninth Circuit's decision in Olin, where in TransUnion the court said you have to have proof for a class member to get damages that they have Article 3 standing. And there has to be a class-wide way to prove that. Otherwise, the individual issues would be incredible. So I'll stop there and hold off for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Paul Hoffman for the plaintiff, Senate Appelese. To go directly to, for one thing, exposure, I don't know that I need to say much about that. Everybody got this. It's on the label. And so that's exposure. Everybody got the same level. It's by definition in the class. Counsel, do we have to worry about the argument made by opposing counsel that maybe they were exposed to, but some of them don't even care. They didn't even notice it. They didn't pay attention. They didn't – For exposure, it doesn't matter. Exposure is just you got it, right? And the other thing is that in terms of the understanding, it is the reasonable consumer standard. It's not whether our expert did it or there's an odd person that didn't understand it in a certain way. We don't have to show that everybody has the same understanding. The test under California law is whether a reasonable consumer would understand it. That's what the California law is. And class certification starts out, as the district judge said, with an understanding of what California law is. And California law has certain requirements in terms of statutory standing and in terms of what you have to show for the UCL. You have to show that the statements are likely to deceive the public. For the CLRA, it's a little bit more. Whatever the case is, the reasonable consumer cared. Whatever the call is there that the reasonable consumer would have affected that person's decision or that the reasonable consumer would have decided this product is valueless. Well, I mean, first of all, I guess on the valueless issue, that goes to the theory of damages, the full refund theory of damages. And I think what the – and one of the things that opposing counsel hasn't said one word about is whether the district judge abused his discretion at all. The district judge went through all of the requirements, went through all of the evidence, considered all of the issues with respect to Ms. Falcone's deposition, considered their argument about why she shouldn't have standing, went through all of these issues and went through all of their documents. And I think – No, I'm not hearing an answer to my question. Oh, I'm sorry. What evidence is the question I posed? And I'm getting kind of a fog bank as to all the things the district judge might have looked at. I'm still waiting to hear what evidence there was that your reasonable consumer or that any appreciable number of consumers thought this product was valueless to get to the bottom line. That's the hard part. The evidence that the judge relied on was the evidence, Judge Clifton, that you referred to before, which is the extensive evidence from Nestle's own documents. Let me stop you there. Let me stop you there because none of that says that all consumers or even a majority of consumers carried those values to the point that they thought the product was valueless. What you point to were suggestions that there were consumers who would be influenced by that. But that's not the damage model you've provided. Well, the – That requires conclusions that these consumers got nothing. And I didn't see any evidence at all to support that proposition. Well, the evidence, if you look at our brief at page 48, there are citations to the information there that many – Let me turn to page 48 because it talks about 57 percent of Chopkin consumers indicating they would stop purchasing from brands that harm people. And 49 percent of Chopkin consumers would stop purchasing from brands that harm the environment. Now, those are things easier to say than perhaps perform because your client demonstrated sometimes the Chocolate Weakness is powerful. But that doesn't tell me that all, let alone the substantial majority of consumers, had those feelings. And so your damage model seems to assume that everybody thinks the product is valueless, and that evidence doesn't support that proposition to my mind. Well, we don't have to show that everybody feels that way. We have to show us at the merit stage. In other words, if we don't show that a substantial number of consumers at the merit stage on this issue feel that way, feel it's valueless or de minimis, then we will lose the case. But you have to at this stage provide evidence to support the proposition, and I don't see it. There is evidence in the record that Nestle understands that it is very important for a significant number of consumers to have sustainability representations. All of their – they have internal surveys, internal documents. There are reams of documents that we put in front of the district court in which the district court relied on to think that this is a very important issue for many consumers. The exact percentage we don't know, but even their expert I think in a – well, let me back off from that. We don't have to show that 100% of consumers feel it's valueless. And for class certification, what Comcast says is that we have to show that our theory of damages stems from our theory of liability, which this does. We are taking – our position is that their actual practices perpetuate child slave labor and child labor in Ivory Coast, that in fact their representations are the opposite of what they have done for decades. In fact, they're a major part of the problem for child slavery in Ivory Coast and deforestation. And so what we're saying is that when a reasonable consumer would see that at trial on the merits, because for class certification we just have to have a model that is susceptible for class-wide relief. The district judge was exactly right that our model stems from the theory of liability and that there's an easy way to calculate it from a class-wide basis. So we've satisfied – Even on a factual basis, it strikes me as laughable. Well – I think you need more than allegation. I mean, the Supreme Court's made clear, I guess Comcast, that you need evidence. You can't just have allegation. And so far, when I ask for the evidence, I'm not really getting much to support the model. Well, but Nestle spends a tremendous amount of money figuring out what impact sustainability representations have on the consuming public, which would be the reasonable consumer. They're targeting the reasonable consumer. And they understand that sustainability representations are crucial to that market. Now, again, we don't have to show that everybody will feel that it's worthless. But in the examples that – Your damage model assumes that. You've got to show a pretty substantial part of the population feels that way. Otherwise, your damage model is kind of devoid of reality. On the merits, if we don't show enough of that, if our proof on the merits – Remember, we haven't had discovery. We haven't gone to that phase. This is about class certification. And the judge was right that there's enough evidence to support this model. Now, the exact percentage will be shown at trial by competing experts about what reasonable consumers would feel. And that's true – Is the only evidence you have to point to is the evidence you've pointed to on page 48? Well, it's not just the evidence on page 48. We have cited – we have attached to our motion for class certification reams of Nestle documents that show this. That they have spent years trying to figure this out and ways to say to the consuming public that we sustainably source cocoa beans when they do the opposite. And what our position is is that when you place that in front of a trier of fact, that the trier of fact will understand that a significant number of consumers feel that way and would not buy this chocolate because they can buy Tony Chocolony chocolate that actually does that as opposed to this that says it does it but actually does the opposite. And the reasonable consumer standard also applies to the materiality question. All of the issues that the other side has said require individualized treatment are not. They're objective standards that are based on the reasonable consumer standard and whether we're able to sustain that at trial on any of these issues is a question of the merits. And that's not at the class certification stage. And I don't think Comcast requires us at this stage to prove before discovery and before exchange of experts and everything that what percentage at this point would feel that this is worthless just as we wouldn't have to prove it in the examples that Kwikset gives about kosher meat or conflict diamonds or any of those things. And there's a whole series of cases that allow for a full refund model in a situation like this where people would have these kind of feelings about these kinds of representations with respect to something as severe as child slave labor. And that goes back to this court had a full refund model in the Figge case 30 years ago. And that case stands for the proposition that if you have a tainted purchase because of representations that if the public understood the real facts as opposed to the deception, that they wouldn't buy the product. That's our theory. And I think for class certification purposes, the judge was clearly right in finding the common issues of deception and materiality on a reasonable consumer basis. The predominance is easily found if you have those common issues that are susceptible of common proof. And then the damages model flows from that theory of liability. And there's substantial evidence in their documents at this stage of the proceedings. Counsel, I'd like to bring you back to standing. I have questions regarding Article 3 standing for you. What are we to make of the statements from Ms. Falcone that she's perfectly fine with the new labels for Nestle? Does that matter for standing purposes? Well, what the district judge found was that the reliance on those statements misconstrued her testimony as a whole. That her testimony as a whole was that she would not have bought the chocolate had she known the truth about what they were doing. And the same thing is true in terms of Article 3 standing for future injunctive relief. Under Davidson and DZ Reserve, what she has to be able to testify is that she would like to buy the chocolate but she can't trust the label anymore. And she doesn't. That's what she said. Now, in a deposition, they got her to say that certain labels look nice. Well, that's not, I mean, her testimony is not that she knows that they've cleaned up their practices because they haven't cleaned up their practices. They still don't get their cocoa beans in a traceable way. They still don't pay people enough money to make sure that people are not taken into child slavery and trafficked across borders from Mali to South Ivory Coast. That hasn't changed. The representations are still deceptive. She didn't say they weren't deceptive. And so what the judge said, looked through that and said, well, okay, they got her to say some things. But that's not, she said all of the things that give her standing, both statutory standing and Article III standing, and the judge properly found that, made those findings, and didn't abuse his discretion in finding that. I don't know if there's anything else on that issue that you want. I mean, this case is about, they made these representations. They didn't have to make the representations. No one forced them to make the representations. They could do business with the worst child slavers in the world if they want to, and California Consumer Law doesn't have anything to say about it. It only has something to say about it when they put these statements on their labels, that they are engaged in sustainable sourcing, reasonable sourcing, and they do the opposite. And that's what California Consumer Law is designed to protect the public from, that kind of deception. And obviously we'll have to prove that at trial. We'll have to show that a reasonable consumer would find these statements to be deceptive, and that they would find them to be material. And as Judge Clifton has pushed us on, we're going to have to show for a full refund model that a significant portion of consumers would feel so strongly about this when they know those facts, that they would not buy this product. That it's the same as someone, a fiancé that's getting an engagement ring and gets a ring that's perfectly fine, but it's from Conflict Diamonds. And that's so abhorrent to her that it's valueless. Or someone wants a kosher meat and gets something that's not kosher meat, and that's valueless even though functionally it's meat, and functionally this is chocolate. But our position, and what we have to prove at trial, is that a substantial number of consumers would feel that a representation that Nestle is engaged in sustainable practices when they are perpetuating one of the worst child slavery situations on the planet is something that they would not pay for. And they'll get their chocolate from somebody else. Thank you, counsel. Thank you. Thank you. First of all, those assertions about Nestle are just false regarding its program. There's no evidence of it. These are allegations that counsel makes in many, many cases, and they've never been accepted. The Nestle cocoa plan has helped 170,000 children, trained more than 100,000 farmers. It's certified by the Rainforest Alliance. There's no doubt about that. It's rather outrageous to have him give a speech like that. On this question that he just ended with, he just described an incredibly highly individualized trial. We get to put on a defense. Nestle gets to show that each class member doesn't care about these issues. And this court in the Hodson case, which involved alleged child slave labor in the chocolate market, said some consumers of chocolate are not concerned about the labor practices used to manufacture the product and noted that these issues do not have they're not related to chocolate's function as chocolate. That would be true in almost any of the examples that were given, for example, in Kwikset, you know, made in USA, kosher, conflict-free. Well, in Kwikset, Your Honor, the court was making the point that some people would say it's valueless. This goes to Judge Clifton's point. To me, if I'm an observant Jew, the lack of kosher would be crucial to me, but it wouldn't be crucial to other people. That's the point. That's why it's individualized. So some people may think I'm not going to buy diamonds like this. Other people don't know about it. They don't care. So that's individualized. Didn't the California court find that the class was appropriating Kwikset? Not everybody cares whether all the components are made in the USA. It was clear that you would still have the opportunity to prove, and here in federal court, if there are millions of people who didn't care and weren't injured, who don't understand any of these statements and, therefore, were not deceived and loved their chocolate, then they're not injured. There's no Article III standing for those absent class members. Put aside Ms. Falcone. And, by the way, Your Honor. Can you give me an example of a case in which there's been some kind of an advertising misrepresentation in which we have found that class certification was correct and it's clear that everybody in the world would have cared about that misrepresentation? Well, the court in. . . Your point, I think, is very well made, but it seems like it's also applicable in every misrepresentation case, and, therefore, you could never certify any misrepresentation case, and I don't think that accords with that. Not necessarily. I can't think of a case where this court has done that because it would be extraordinary. But in the context of the defendant being able to put on their case, the Maza case is a good example where the court said, look, there were these statements. They were available, but they weren't necessarily seen by everyone. There has to be a connection to those people. The Lytle case. . . And that would also apply in the example that I gave you. If Nestle had just falsely misrepresented the number of calories, there would be some people who wouldn't care. You couldn't even certify a class there, could we? Well, you'd have to look and see if the individualized issues would overwhelm the common ones. Nestle would have an opportunity. This is what Wal-Mart said. The Supreme Court said the defendant gets a chance to put on their case in their individualized defenses. So the weighing. . . The big error the district court made, and counsel makes it again, is the one that the Supreme Court rejected, the position rejected in Wal-Mart. The merits have to be grappled with at class certification. And, Judge Clifton, you were making this point. You have to look at the merits. Their claim for full-value refund does not fit the liability theory. There's no way the chocolate was worthless to everybody. The law of California, the Tobacco II case, they argued that the cigarettes were worthless because they weren't safer. And the California Court of Appeals said, no, you can go for a reduction in value. This would be highly individualized. And I'll just finish with, again, Ms. Falcone's statements. She said the company's making good progress. They're putting their money where their mouth is. The labels were perfect. She could consult the COCO plan website. Nestle's not hiding anything. Counsel is just distorting the facts. I urge the court to look at the reports that are in the record from the Nestle COCO plan. It's what companies should be doing to improve the conditions, to improve the supply chain. Thank you very much. All right, counsel, you're running out of time. Thank you. Okay, this concludes the arguments in this case. I appreciate counsel's vigorous arguments. This case is now submitted. Thank you.
judges: CLIFTON, BYBEE, ALBA